**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0905n.06

No. 11-3364

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED
Aug 16, 2012
LEONARD GREEN, Clerk**

| | |
|---|---|
| DAVID COOK, ) | |
| ) | |
| **Plaintiff-Appellant,** ) | ON APPEAL FROM THE |
| ) | UNITED STATES DISTRICT |
| v. ) | COURT FOR THE SOUTHERN |
| ) | DISTRICT OF OHIO |
| PRUDENTIAL INSURANCE ) | |
| COMPANY OF AMERICA, ) | |
| ) | **O P I N I O N** |
| **Defendant-Appellee.** ) | |
| ) | |

Before:  SUHRHEINRICH, MOORE, and CLAY, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  Plaintiff-Appellant David Cook filed this civil lawsuit seeking judicial review of Defendant-Appellee Prudential Insurance Company of America's ("Prudential") decision to deny his application for long-term disability benefits. Although the parties raised two timeliness issues in the proceedings below, the district court decided the case on the merits, determining that Prudential's decision was not arbitrary or capricious and granting Prudential's motion for judgment on the administrative record. Because substantial evidence supports Prudential's decision, we **AFFIRM**.

**I.  BACKGROUND**

Cook began working as a telephone collector for Bank One in July 1991. Cook suffered polio as a child and had a long history of muscle weakness, which doctors believed was attributable at least in part to a condition known as post-polio syndrome. Cook also had a history of depression.

Around 2000, Cook began experiencing other medical problems, including increased muscle and joint pain and edema, diabetes mellitus, and severe obstructive sleep apnea. Consistent with these diagnoses, Cook's medical records support a substantial number of physician visits, therapy sessions, and referrals. In 2004, for example, a report from the Morrow County Hospital emergency department reflects increased edema in Cook's lower extremities. In December of that year, medical records also indicated that Cook had reported experiencing dizziness, light-headedness, headaches, and falls. Around August of 2005, Cook began experiencing "increasing pain with ambulation," Admin. Record ("A.R") at 483 (Page ID #532), and, on June 9, 2006, Cook was referred to Dr. Erick Arce, a neurologist, for further evaluation. Around that time, Cook also began consulting with physicians concerning his sleep apnea, which one neurologist described as "profound." *Id.* at 423 (Page ID #472). In conjunction with these assessments, the record is replete with diagnostic tests and nerve-conduction studies, physician notes, and other documentation of Cook's medical care.

Cook first took disability leave as a result of these issues in early 2004, and received short-term disability from Bank One through his return to work in July of that year. Cook, however, was forced to stop working entirely on October 28, 2004, due to continuing medical problems. Bank One resumed the short-term disability benefits, but notified Cook of its intent to stop making those payments in December 2004.[1]

Cook applied for Social Security disability benefits in February 2005. In the application, Cook described his position as conducting computer-connected phone calls during which he

---

[1]Cook separately challenged Bank One's denial of short-term disability payments. That litigation ultimately settled.

reviewed customer accounts and sought payment on outstanding balances. Cook estimated that the job required approximately one hour of walking, a half hour of standing, and six-and-a-half hours of sitting per day. The application also included letters from two of Cook's treating physicians. In one letter, neurologist Dr. J. Blake Kellum indicated that Cook had "a remote history of polio, which has severely affected his lower extremities" and opined that Cook was "disabled from the standpoint of any type of work that would involve the use of his lower extremities." *Id.* at 474 (Page ID #523). In the other letter, Dr. Paramvir Bains discussed Cook's sleep apnea, post-polio syndrome, diabetes, and hyperlipidemia, and stated that "compounded together," the conditions "ma[d]e it extremely difficult for Mr. Cook to work fulltime at this time." *Id.* at 489 (Page ID #538). Dr. Bains noted Cook's self-reported inability "to remain in a seated position for more than 30 minutes at a time, ambulate greater than 50' without stopping at least once, and limited strength to his upper and lower extremities," and concluded that "Mr. Cook has significant medical conditions which limit his ability to be fully employed at this time or in the near future." *Id.*

As part of the Social Security review, Cook also received medical evaluations from three other medical professionals, all of which were included in the materials submitted to Prudential. On April 25, 2005, Dr. William Schonberg, a psychologist, evaluated Cook's mental status. Dr. Schonberg concluded that Cook's "mood seemed mildly depressed," that Cook's "mental ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks" was "mildly to moderately impaired," and that Cook's "mental ability to withstand the stress and pressures associated with day to day work activity" was also "moderately impaired." *Id.* at 296–97

(Page ID #345–46). The report did not, however, recommend any restrictions on account of these findings.

The two other physicians conducted physical assessments. In the first assessment, dated July 8, 2005, Dr. Charles Derrow concluded that Cook was capable of performing sedentary work, including frequently lifting objects of less than ten pounds, standing or walking less than two hours per day, and sitting about six hours a day. The second assessment, dated February 7, 2006, resulted in a similar finding. Specifically, Dr. Gary Hinzman concluded that Cook was "capable [of] working at [a sedentary] level" and that the evidence "[did] not support" Cook's inability to lift or carry or Dr. Kellum's statement that Cook was disabled. *Id.* at 350 (Page ID #399).

A Functional Capacity Evaluation ("FCE") conducted on February 20, 2007, conveyed a less optimistic picture. The FCE presented Cook's self-reported tolerances, which indicated that Cook was able to sit for only thirty minutes at a time, stand for about five minutes at a time, and walk for ten to fifteen minutes at a time. *Id.* at 381 (Page ID # 430). Upon completion of the testing, the physical therapist determined that "[o]verall test findings, in combination with clinical observations, identify Mr. Cook's subjective reports of pain and associated disability to be both reasonable and reliable." *Id.* at 402 (Page ID #451). She further concluded that Cook's "physical abilities did not match up with the critical physical demands of [his] position" and that Cook "would not be safe to return to this position at this time due to limited static/dynamic standing balance which decreases his safety during functional mobility, lifting, pushing, and pulling tasks." *Id.* at 461 (Page ID #510). These work-capacity assessments, however, were based on an erroneous classification of Cook's job

as involving the physical demands of "light" duty. *Id.*[2] Both Cook's self-reported description of his position and the generic description used in Prudential's denial letter, however, identify Cook's position as "sedentary," which is a less demanding classification.

On April 14, 2008, an administrative law judge ("ALJ") determined that Cook had been disabled since October 28, 2004. Although the ALJ did not find Cook to have an impairment or combination of impairments that rendered him totally disabled, the ALJ determined that Cook's "residual functional capacity [was] diminished to sedentary work . . . that does not require more than occasional climbing of ramps or stairs, more than occasional stooping, no climbing of ladders, ropes or scaffolds, no balancing, no kneeling, no crouching and no crawling." *Id.* at 161 (Page ID #210). The ALJ also found that Cook's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] generally credible." *Id.* Because the ALJ concluded that Cook's physical limitations rendered him disabled from his work at Bank One and that there were no other jobs that Cook was capable of performing, the ALJ issued a favorable disability determination.

In addition to reviewing the materials in support of Cook's Social Security disability claim, Prudential also obtained reviews from two independent physicians. In the first, Dr. Leonid Topper, a board-certified neurologist, opined that Cook had functional impairments beginning October 28, 2004, which limited Cook to no more than light work that required occasional lifting of up to 25 pounds and frequent lifting of 10 pounds, and that after June 9, 2006, Cook was "limited to sedentary

---

[2]The FCE appears to have assumed that Cook's job entailed lifting, carrying, pushing, and pulling of twenty pounds for up to one third of a day, as well as the ability to stand and walk for up to one third of a day.

full-time work." *Id.* at 143 (Page ID #192). Dr. Topper concluded both that "[t]he evidence supporting these restrictions and limitations consists of a clear documented history of infantile poliomyelitis, complicated by several additional events" and that "the fact of slowly developing motor weakness appears to be believable, and is supported by medical evidence." *Id.* at 144 (Page ID #193). Dr. Topper questioned Cook's reports of chronic pain, but noted Cook's "significant weakness, with multiple falls, and abnormalities on EMG and nerve conduction studies." *Id.* He concluded that "further weakness" was the most likely disease progression and that "[n]o improvement [was] likely." *Id.* Dr. Stuart Gitlow, a board-certified psychiatrist, performed the second evaluation. After noting that Cook had some history of depression but "did not meet Social Security disability standards secondary to mental health disorders," Dr. Gitlow concluded that "the information provided for review does not support that restrictions or limitations are required from psychological or cognitive symptoms." *Id.* at 146 (Page ID #195).

Prudential received Cook's completed long-term disability ("LTD") application on July 29, 2007.[3] On January 12, 2009, Prudential issued a letter denying Cook's final appeal and informing

---

[3]Although there is some question whether Cook's claim was timely filed, because we decide the case on the merits, we do not reach the timeliness issue. Assuming a claim is timely, Prudential's LTD plan provides that a claimant becomes eligible for disability benefits when he or she (1) is "unable to perform the *material and substantial duties* of [his or her] *regular occupation* due to [the] *sickness* or *injury*" and (2) has "a 20% or more loss in [his or her] *indexed monthly earnings* due to that *sickness* or *injury*." A.R. at 1118 (Page ID #1167). "Material and substantial duties," in turn, refers to job responsibilities that "are normally required for the performance of [the claimant's] regular occupation" and "cannot be reasonably omitted or modified." *Id.* In determining the responsibilities of a claimant's "regular occupation," Prudential looks at the claimant's occupation "as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location." *Id.* To qualify for benefits, a claimant must have been "continuously disabled" through the 182-day elimination period. *Id.* at 1119 (Page ID #1168).

Cook that it was denying his claim for long-term disability benefits.[4] Relying largely on the external physician reviewers, Prudential stated that Cook's physical presentation of symptoms was "logical and believable," but that the record "[did] not indicate the presence of a psychiatric diagnosis, or related restrictions/limitations." *Id.* at 1029–30 (Page ID #1078–79). The letter further concluded that "[b]ased on the medical records in file, Mr. Cook retained the capacity to perform his own sedentary level occupation as a Telephone Collector from October 28, 2004 forward." *Id.* at 1030 (Page ID # 1079). Although the letter noted the ALJ's decision granting disability benefits, it justified Prudential's decision not to similarly grant benefits by stating simply that Social Security requirements are different than those applied by the plan administrator.

On May 27, 2009, Cook filed a complaint in federal court challenging Prudential's decision. The parties subsequently filed cross-motions for judgment on the administrative record. Finding evidence in the record to support Prudential's determination, the district court concluded that Prudential's decision was not arbitrary or capricious and granted judgment in its favor. Cook filed this timely appeal.

---

[4]Prudential's letter noted that it was "not obligated to review Mr. Cook's late filing," but stated that "in light of the substantial and complete medical history received, and in ignorance of any binding decision between Bank One and Mr. Cook regarding his STD claim, a full medical review was determined to be in the best interest of all parties." A.R. at 1029 (Page ID # 1078).

## II. LAW & ANALYSIS

### A. Standard of Review

"We review *de novo* the decision of a district court granting judgment in an ERISA disability benefit action based on an administrative record and apply the same legal standard as did the district court." *Glenn v. MetLife*, 461 F.3d 660, 665 (6th Cir. 2006) (citation omitted), *aff'd*, 554 U.S. 105 (2008). Although we also typically review the denial of benefits de novo, *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 456 (6th Cir. 2003), the plan documents here, as both parties agree, grant Prudential "the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." A.R. at 1140 (Page ID #1189). Accordingly, we review Prudential's decision only to determine if it was arbitrary or capricious. *Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 552 (6th Cir. 2008). Where, as here, the plan administrator both decides a claimant's eligibility for benefits and pays them, we may consider the resulting potential for a conflict of interest when determining whether the decision was arbitrary or capricious. *Glenn*, 461 F.3d at 666.[5]

Although deferential, arbitrary-or-capricious review entails a full analysis of the administrative record as it existed on January 12, 2009, when Prudential issued its final decision

---

[5]In affirming our earlier opinion, the Supreme Court endorsed this approach, holding that a plan administrator's dual role as evaluator and payor of benefits claims is "one factor among many that a reviewing judge must take into account" when reviewing a plan administrator's denial of benefits. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008). The Court emphasized that the significance of such a conflict must be determined on a case-by-case basis and concluded that our opinion had appropriately weighed this factor in concert with other relevant factors in concluding that the plan administrator had abused its discretion. *Id.* at 118.

denying Cook's LTD claim. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005). We "will uphold the administrator's decision if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn*, 461 F.3d at 666 (internal quotation marks omitted). Accordingly, we must evaluate "the quality and quantity of the medical evidence and the opinions on both sides of the issues," *McDonald v. Western–Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003), and decide "whether, in light of the administrative record as a whole, the explanation for the decision to deny or terminate benefits is rational." *Moon*, 405 F.3d at 381. "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis ex rel. Farmers Bank & Capital Trust Co. of Frankfort, Ky v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotation marks omitted), *cert. denied*, 495 U.S. 905 (1990); *see also Moon*, 405 F.3d at 379.

**B. Cook's LTD Claim**

As an initial matter, both parties devote substantial portions of their briefing to determining whether Cook's LTD claim and subsequent lawsuit were timely filed, and, if not, whether Cook is entitled to equitable tolling in this case. Because these arguments present potentially complicated and far-reaching issues and because the claim can more easily be decided on the merits, we assume without deciding that Cook's claims were timely and proceed to the merits of the case.

Cook challenges Prudential's merits decision on a number of bases. First, he contends that Prudential's reliance on the two independent medical reviewers was objectively unreasonable due to bias, the deficient qualifications of Dr. Topper in particular, the absence of independently conducted medical evaluations, and the exclusion of a few items from the files presented to the

independent reviewers. Cook further argues that Prudential failed to consider the characteristics of his particular position at Bank One and whether he could perform the "essential functions" of his position. Appellant Br. at 36. Finally, Cook argues that Prudential's failure to consider other evidence—such as the Social Security disability determination, the opinions of Cook's treating physicians, and the results of Cook's latest FCE—provides further evidence of arbitrariness.

We have recognized many of these factors as potentially indicative of arbitrary-or-capricious decision making, and therefore consider each of Cook's arguments in turn.

### 1. The Independent Reviewers

Cook challenges the validity of Prudential's independent reviewers on numerous grounds. Initially, Cook attempts to discredit Dr. Topper's opinion, maintaining that Dr. Topper is both biased due to his frequent consulting work for disability plan administrators and unqualified to render an opinion about Cook's post-polio syndrome.

We have clearly recognized that an independent reviewing physician's potential bias can be a factor in determining whether the plan administrator's decision was arbitrary or capricious. *Moon*, 405 F.3d at 381–82. This is due to the possibility that "a consultant engaged by a plan may have an incentive to make a finding of not disabled." *Kalish v. Liberty Mut./Liberty Life Assurance Co.*, 419 F.3d 501, 508 (6th Cir. 2005) (internal quotation marks omitted) (indicating that potential for biased evaluation factors into our analysis of "whether the plan administrator acted arbitrarily and capriciously in deciding to credit the opinion of its paid, consulting physician.").

To support his allegations of bias, however, Cook offers no more than cursory statements that lead only to the innocuous conclusion that Dr. Topper has been involved in other independent

medical reviews; they do not suggest that Dr. Topper had any tendency to decide cases against the claimants. Under our precedents, such allegations are insufficient to render Prudential's reliance on Dr. Topper arbitrary or capricious. *See id.* (requiring statistical or other specific evidence to conclude that a physician consistently gave opinions in favor of plan administrators); *see also Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006) (remanding for further review in part because the district court failed to consider bias arguments against a physician whose opinions had been questioned in three prior federal cases). We therefore do not afford this argument any weight here.

The same is true regarding Cook's claim that Dr. Topper is unqualified. Although Cook does not contest Dr. Topper's board certification in neurology, he faults Dr. Topper for having a pediatric specialization. Cook, however, cites no authority in support of his proposition that this additional specialization somehow renders Dr. Topper unqualified to review his case. *Cf. Kansky v. Coca-Cola Bottling Co.*, 492 F.3d 54, 60 (1st Cir. 2007) (concluding that a physician was not unqualified to review a disability file purely on the basis that the physician had not specifically researched the claimant's particular condition). Furthermore, Cook's assertion that Dr. Topper "misdiagnosed" his condition as polio rather than post-polio syndrome is betrayed by a complete review of Dr. Topper's evaluation, which clearly has not confused the two.

Cook next challenges the reliability of Prudential's reviewers based on their failure to conduct independent examinations. As with the issues above, failure to conduct such an examination may contribute to a finding that the plan administrator's decision was arbitrary or capricious. *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 295 (6th Cir. 2005) (noting that the absence of a

physical examination "may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination"). Although reliance on a file review does not alone evidence arbitrary or capricious decision making, *id.*, if the physician fails "to describe the data he reviewed in reaching his decision" or makes "credibility determinations concerning the patient's subjective complaints without the benefit of physical examination," reliance on such opinions may tip the scale toward unreliability. *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 263 (6th Cir. 2006); *see also Helfman v. GE Group Life Assurance Co.*, 573 F.3d 383, 395–96 (6th Cir. 2009) ("[C]redibility determinations made without the benefit of a physical examination support a conclusion that the decision was arbitrary.").

Here, a few conclusions in the reviewers' reports tend to support Cook's argument that a separate examination would have been the most appropriate course. For instance, at one point in his report, Dr. Topper concluded that Cook's subjective claims of chronic pain were "not supported." A.R. at 145 (Page ID #194). This is, in effect, a subjective credibility determination best made with the assistance of an actual medical examination. Nevertheless, Dr. Topper's remaining conclusions were amply supported by the record. The only physician to have even suggested that Cook's subjective pain would prohibit any employment was Dr. Bains. The remaining evidence generally supports the conclusion that Cook was both believable in his presentation of symptoms and that he was objectively capable of performing sedentary work. The same is true with respect to Dr. Gitlow's conclusion that Cook's depression did not support his disability claim. The record supports Cook's long-time depression, as well as other mild to moderate mental impairments. But, as the district

12

court correctly observed, nothing in the record suggests that Cook was disabled or otherwise limited as a result of these findings.

The existence of considerable objective evidence in support of Cook's ability to perform sedentary work distinguishes his case from others in which the absence of a medical exam carried additional weight—for example, where consulting physicians concluded both without examination *and* in the face of substantial contrary evidence that the claimant's subjective symptoms were unreliable. *Cf. Morris v. Am. Elec. Power Long-Term Disability Plan*, 399 F. App'x 978, 990 (6th Cir. 2010) (unpublished opinion) (rejecting a similar argument after noting that the case did not involve "a situation in which the reviewing psychiatrists and psychologists are flatly contradicting the conclusions of those who examined the patient"). Given the record before us, we thus cannot conclude that Prudential's reliance on these file reviewers—even absent independent medical exams—merits much weight in determining whether the final decision was arbitrary or capricious.

Finally, Cook challenges Prudential's determination on the basis that it provided Drs. Topper and Gitlow with a "cherry-picked" record. Appellant Br. at 31. Under this circuit's case law, when a physician reviewer conducts a file review, "the plan administrator must provide [a reviewing physician] with all letters from a claimant's physician, which the file reviewer must consider." *Helfman*, 573 F.3d at 393; *see also Glenn*, 461 F.3d at 671 (indicating that the plan administrator's failure to provide two letters from the claimant's treating physician was a consideration in the overall evaluation of the plan administrator's decision). In *Spangler v. Lockheed Martin Energy Systems, Inc.*, 313 F.3d 356, 362 (6th Cir. 2002), for example, we determined that the plan administrator's attempt to "cherry-pick[]" a file in which all but one of the physician reports supported a disability

finding "in the hopes of obtaining a favorable report from the vocational consultant" rendered the denial of benefits arbitrary or capricious.

Here, a few materials likewise appear to have been omitted, including the letter in which Dr. Bains discussed his belief that Cook was completely disabled from full-time employment. Prudential does not seem to challenge this point, and instead notes that the letters did not contain significant objective evidence necessary for an accurate file review and that Prudential itself considered the omitted evidence even if the file reviewers did not. Under our precedents, these arguments are beside the point. Nevertheless, although Prudential's omissions do weigh in Cook's favor, they are not alone enough to render Prudential's decision arbitrary or capricious. "[T]he ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious. For this, we must examine [the plan administrator's] decision in light of the administrative record." *Id.* Furthermore, "[t]his is not a situation, as in *Spangler*, where the plan administrator picked one aberrant medical evaluation from the administrative record and provided it to a 'neutral' reviewer for evaluation." *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 311 (6th Cir. 2010) (rejecting a similar claim of "cherry-picking"). Instead, the record as a whole supports the reviewers' opinions, and, although we do not condone Prudential's failure to provide its reviewers with Cook's complete file, we cannot conclude that this shortcoming is sufficient to overcome the substantial evidence supporting Prudential's decision.

### 2. Prudential's Analysis of Cook's Occupational Requirements

Cook next argues that Prudential failed to consider his medical limitations in relation to his ability to perform his specific job duties. Prudential's letter, however, explicitly noted its consideration of this issue and concluded that "[b]ased on the medical records in [the] file, Mr. Cook retained the capacity to perform *his own sedentary level occupation as a Telephone Collector* from October 28, 2004 forward." A.R. at 1030 (Page ID #1079) (emphasis added). Furthermore, Prudential reached its conclusion after considering both Cook's specific description of his job requirements and the more generic "Collection Clerk" description. Although additional analysis would have been desirable, Prudential's analysis of this issue does not render its decision arbitrary or capricious.

### 3. Prudential's Alleged Failure to Consider Other Evidence in the Record

Cook's final arguments relate to Prudential's allegedly insufficient consideration of other record evidence supporting Cook's claim. First, Cook faults Prudential's denial letter for doing little more than citing the Social Security determination without evaluating the reasoning behind it.

A plan administrator's failure to consider an award of benefits by the Social Security Administration ("SSA") is not per se arbitrary, but it is nonetheless a consideration in the court's review. *Glenn*, 461 F.3d at 669. Cook's case, however, is distinguishable from those in which failure to consider the SSA's determination played a role in undermining the plan administrator's decision-making process. Unlike this case, those prior cases mainly involve instances in which the disability determinations of the SSA and the plan administrator were in conflict. *See, e.g.*, *Bennett*, 514 F.3d at 553 (faulting the plan administrator for failing "to explain why it reached a conclusion

15

*contrary to* that of the SSA" (emphasis added)); *Glenn*, 461 F.3d at 669 (finding administrator's failure to consider the SSA's total-disability determination a "significant factor"). Here, however, Prudential and the SSA essentially reached the same conclusions concerning Cook's capacity to engage in sedentary work. The only discernable difference between the decisions was that the ALJ, for unexplained reasons, found that Cook's position at BankOne involved "light" level work, despite Cook's own characterization of the work as sedentary. The ALJ did not make a finding of total disability, and instead determined only that there were no comparable sedentary-level jobs for Cook to perform. Because the ALJ's decision ultimately supports Cook's ability to perform sedentary work, Prudential's failure to address it substantively is entitled to very little weight.

Cook's second argument, which maintains that Prudential failed to consider the opinions of his treating physicians, suffers from similar deficiencies. A plan administrator's unexplained dismissal of the opinions of treating physicians clearly can lead to a finding that the plan administrator's decision was arbitrary or capricious. *Glenn*, 461 F.3d at 671. Although such opinions are not entitled to special deference, a plan administrator "may not arbitrarily repudiate or refuse to consider" them. *Id.* (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)).

Admittedly, Prudential's decision never addressed Dr. Bains's letter, which opined that Cook was completely disabled from any full-time work. Instead, Prudential relied almost entirely on the opinions of its independent reviewers. Given that a plan administrator's decision to give "greater weight to a non-treating physician's opinion for no apparent reason lends force to the conclusion that [it] acted arbitrarily and capriciously," *Elliott*, 473 F.3d at 620 (internal quotation marks omitted),

16

this omission weighs in Cook's favor. Nevertheless, much of the administrative record consists of objective medical evidence that supports Prudential's conclusion that Cook was capable of performing sedentary work. As discussed above, Prudential's decision is also consistent with the ALJ's determination that Cook's "residual functional capacity is diminished to sedentary work." A.R. at 161 (Page ID #210). Two pieces of evidence—Dr. Bains's letter stating skepticism that Cook could be employed at all and the most recent FCE, which suggests substantial physical limitations—constitute the majority of the evidence in favor of Cook's assertion of complete disability, and the FCE is only partially supportive because of the confusion regarding the exertion level required for Cook's occupation. Although Cook places substantial significance on Dr. Kellum's opinion, Dr. Kellum's stated restrictions relate only to the "use of [Cook's] lower extremities." *Id.* at 474 (Page ID #523). The other two physician reviewers, Drs. Derrow and Hinzman, though recognizing certain limitations on Cook's ability to work, also support Prudential's decision finding Cook capable of sedentary work. Although we view Prudential's cursory analysis as somewhat troubling, we cannot conclude on these facts that the omission renders Prudential's decision arbitrary or capricious.

"[C]omplete consensus is not required to establish a reasoned basis for an administrative decision." *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 847 (6th Cir. 2000). Instead, the plan administrator's decision need only be "sufficiently grounded in reason and evidence to satisfy the least demanding form of judicial review." *Id.* (internal quotation marks omitted). To be sure, Prudential's decision letter is hardly a model of clarity, and at many points, its stated reasons for denying Cook's claims are unduly perfunctory. Even so, we simply cannot conclude from the

evidence before us that the record compels—or even strongly supports—a different result. Because Cook's claim fails on the merits, we decline to address the timeliness issues raised in his brief.

### III. CONCLUSION

As the district court correctly pointed out, the "record does not contain overwhelming evidence of total disability, and, in fact (with the single exception of Dr. Bains), points strongly to the conclusion that Mr. Cook can do a sedentary job." R. 20 (Dist. Ct. Op. at 25) (Page ID #1288). We agree. Accordingly, we **AFFIRM** the district court's well-reasoned judgment in favor of Prudential.