RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0065p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

NICOLE CULTRONA,

        *Plaintiff-Appellant/Cross-Appellee,*

    *v.*

NATIONWIDE LIFE INSURANCE COMPANY, NATIONWIDE DEATH BENEFIT PLAN, and STARLINE GROUP,

        *Defendants-Appellees,*

NATIONWIDE BENEFITS ADMINISTRATIVE COMMITTEE,

        *Defendant-Appellee/Cross-Appellant.*

Nos. 13-3558/3585

Appeal from the United States District Court
for the Northern District of Ohio at Akron
No. 5:12-cv-00444—Sara E. Lioi, District Judge.

Argued: March 19, 2014

Decided and Filed: April 9, 2014

Before: GILMAN, COOK, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Kelly S. Lawrence, FRANTZ WARD LLP, Cleveland, Ohio, for Appellant/Cross-Appellee. Daniel W. Srsic, LITTLER MENDELSON, P.C., Columbus, Ohio, for Appellees in 13-3585 and Appellee-Cross-Appellant in 13-3585. **ON BRIEF:** Kelly S. Lawrence, Mark L. Rodio, Michael E. Smith, FRANTZ WARD LLP, Cleveland, Ohio, for Appellant/Cross-Appellee. Daniel W. Srsic, Lisa M. Kathumbi, LITTLER MENDELSON, P.C., Columbus, Ohio, for Appellees in 13-3585 and Appellee-Cross-Appellant in 13-3585.

———————————

**OPINION**

———————————

RONALD LEE GILMAN, Circuit Judge.  Nicole Cultrona filed suit against Nationwide Life Insurance Company (Nationwide), the Nationwide Death Benefit Plan (the Plan), the Nationwide Benefits Administrative Committee (the BAC), and StarLine Group (StarLine) following the denial of her claim for accidental-death benefits and her subsequent exhaustion of the Plan's internal administrative procedures.  The claim was based on the death of Nicole's husband, Shawn Cultrona, in June 2011.  Nicole, an employee of a Nationwide affiliate, was a participant in the Plan.  Among other benefits, the Plan provided coverage in the event of an accidental death.  Shawn was a covered person under the Plan, and Nicole was the designated beneficiary for any benefits paid as a result of Shawn's death.  Following the parties' cross-motions for judgment on the administrative record, the district court entered judgment in favor of the defendants, but assessed a statutory penalty of $55 per day (for a total of $8,910) against the BAC for its delay in providing Nicole with a copy of the accidental-death policy after her written request for relevant documents.

Nicole argues that the denial of her claim was arbitrary and capricious.  On the other hand, the BAC (on behalf of itself and the other defendants) asks us to affirm the judgment in its favor, but separately contends that the district court erred in the imposition of a penalty against the BAC as the Plan administrator.  For the reasons set forth below, we **AFFIRM** the judgment of the district court in all respects.

**I.  BACKGROUND**

Benefits are payable under the Plan if a covered person suffers an "injury" as a result of an "accident."  An accident is defined in the policy as "an unintended or unforeseeable event or occurrence which happens suddenly and violently."  But not every accident is covered under the Plan.  One of the Plan's exclusions, Exclusion 12, provides that no benefits will be paid if the "*Covered Person* [is] deemed and presumed, under the law of the locale in which the *Injury* is sustained, to be under the influence of alcohol or intoxicating liquors." (emphasis in original).

Nicole discovered Shawn's body in the first-floor bathroom of their Twinsburg, Ohio home on June 5, 2011. Shawn had gone out drinking the night before, while Nicole and the couple's young child had spent the night at a friend's house. When Nicole found Shawn's body, it was cold to the touch. The Summit County Medical Examiner's Office performed an autopsy the next day. In the autopsy report, the examining pathologist concluded that the cause of death was "[a]sphyxia by extreme and restricted position (positional asphyxia)" and the manner of death was "[a]cute ethanol intoxication . . . ACCIDENT: Prolonged and extreme hypertension of neck and torso while intoxicated." Shawn's blood-alcohol level at the time of the autopsy was .22%.

Nicole filed a claim for accidental-death benefits with StarLine, the claims administrator for the Plan, later that same month. The total value of the claim was $212,000. After receiving the claim, StarLine obtained an investigative report from EMSI Investigative Services. That report incorporated a criminal-history search, Shawn's motor-vehicle records, the Summit County Medical Examiner's Office reports (autopsy, investigation, and toxicology), and the Twinsburg Police Department report. StarLine subsequently forwarded these materials to Nationwide for processing.

Nationwide, in turn, directed StarLine to deny Nicole's claim in October 2011. The denial letter explained that the claim was being denied because "the loss is precluded from coverage by Exclusion 12." Unfortunately, the letter cited an earlier version of Exclusion 12 that provided as follows: "The *Covered Person* being deemed and presumed, under the law of the locale in which the *Injury* is sustained, to be driving or operating a motor vehicle while under the influence of alcohol or intoxicating liquors." (emphasis in original). The letter continued:

> The police report states that they responded to the deceased's home at 1146 hours on June 05, 2011 and found the deceased dead on the bathroom floor. According to interviews they conducted, Shawn Cultrona had a history of alcohol abuse and, in the hours before he died, had been out drinking with friends and was seen stumbling and walking into chairs prior to driving himself home.

> The Medical Examiner's report determined that death occurred when the deceased became unconscious while intoxicated (passed out) [and] . . . [t]he County of Summit Toxicology Report indicates that the deceased's blood ethanol level was 0.220.

As noted above . . . [t]he requirements for coverage under the policy are not met on these facts given Shawn Cultrona's acute ethanol intoxication at the time of death. Additionally, since the deceased's blood level content was in excess of the level at which Ohio presumes intoxication as a matter of law; the loss is precluded from coverage by Exclusion 12 above.

Nicole's attorney responded to StarLine's denial letter by calling the denial "completely unfounded, and either made in bad faith or with a complete misreading of the Policy and Exclusion 12." The response explained that the version of Exclusion 12 cited in the denial letter applied only in cases involving the operation of motor vehicles.

StarLine responded to counsel's letter seven days later. In its reply, StarLine acknowledged that the initial denial letter contained an erroneous reference to an earlier version of Exclusion 12. The reply further explained:

[A]s you noted, this "was a complete misreading of the Policy and Exclusion 12." The Exclusion cited in our denial letter dated October 21, 2011, was quoted incorrectly. The policy was amended in January, 2010 effectively changing Exclusion 12 as follows:

"It is also hereby noted and agreed that Exclusion #12 as found under Section X – 'Exclusions' on page 18 of the Policy is amended to remove the reference to 'driving or operating a motor vehicle' . . .

Amendment I was inadvertently overlooked when the letter was prepared. Please accept our sincere apologies for the error and the confusion it caused and extend the same to Mrs. Cultrona. A copy of Amendment I is included for your reference.

Based on the amended Exclusion 12 language, Nationwide has determined that the denial shall prevail. As noted in the original letter, this Plan of Insurance is covered by ERISA and as such, Mrs. Cultrona has the right to appeal the denial. That process is set forth in the original denial letter, a copy of which is enclosed.

Nicole's attorney responded to the second denial letter the next day, simultaneously appealing the denial and requesting "all documents that you contend prove that Nationwide provided notice of Amendment No. 1 . . . and all documents comprising the administrative record and/or supporting Nationwide's decision." StarLine forwarded the appeal to Nationwide for review by the BAC.

In January 2012, the BAC denied Nicole's appeal. The BAC explained that Exclusion 12 precluded the payment of benefits because "Shawn Cultrona's death was caused by . . . [a]cute ethanol intoxication." Nicole then filed suit in federal court, asserting claims under the Employee Retirement Income Security Act of 1974 (ERISA) and a common-law breach-of-fiduciary-duty claim against Nationwide, the Plan, the BAC, and StarLine. Her ERISA claims were twofold. First, Nicole sought payment of the death benefits pursuant to the Plan. She next sought statutory penalties as a result of the BAC's failure to timely provide her with a copy of the accidental-death policy.

The parties subsequently filed cross-motions for judgment on the administrative record. After extensive briefing, the district court entered judgment in favor of the defendants. *See Cultrona v. Nationwide Life Ins. Co.*, 936 F. Supp. 2d 832, 859 (N.D. Ohio 2013). The defendants' victory, however, was only partial. Agreeing with Nicole that the BAC had breached its statutory duty to provide her with Plan-related documents upon written request, the court imposed a penalty of $55 per day (for a total of $8,910) against the BAC. These timely cross-appeals followed.

## II. ANALYSIS

### A.    Standard of review

We review de novo the "decision of a district court granting judgment in an ERISA disability action based on an administrative record." *Helfman v. GE Grp. Life Assurance Co.*, 573 F.3d 383, 392 (6th Cir. 2009) (internal quotation marks omitted). Because the Plan administrator in this case had discretion to interpret the Plan, the denial of benefits is reviewed under the arbitrary-and-capricious standard. *Id.* This means that the decision denying benefits must be upheld so long as it is "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Id.* (internal quotation marks omitted). Finally, where the "plan administrator both decides a claimant's eligibility for benefits and pays [those benefits], we may consider the resulting potential for a conflict of interest when determining whether the decision was arbitrary or capricious." *Cook v. Prudential Ins. Co. of Am.*, 494 F. App'x 599, 604 (6th Cir. 2012).

**B.      The district court correctly concluded that the denial was not arbitrary or capricious**

Nicole offers several arguments in support of her contention that the BAC acted arbitrarily and capriciously in denying her claim.  First, she argues that the BAC was operating under a conflict of interest because it is a division of Nationwide.  Pointing to the BAC's charter, she notes that each member of the BAC is a director-level or higher employee of Nationwide.  Nicole contends that the district court failed to give adequate weight to this alleged conflict.

But a conflict of interest, standing alone, does not require reversal.  *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 664 (6th Cir. 2013).  Instead, a conflict is simply "another factor in evaluating the quality of [the plan administrator's] decisionmaking process."  *Id.*  A claimant must do more than offer general inferences of a conflict based on self-interest.  *Id.*  But the only argument Nicole makes beyond such inferences is her contention that the BAC did not consult with an independent medical professional before denying her appeal.

This argument is unavailing because a file-only review does not compel the conclusion that the Plan administrator acted improperly.  *See id.*  And, as the district court explained in its opinion, the Summit County Medical Examiner's Office functioned as a de facto independent medical examiner in this case.  *See Cultrona*, 936 F. Supp. 2d at 851 n.9 ("[T]he medical examiner is a disinterested medical expert.").  Because Nicole's conflict-of-interest argument is not supported by the record in this case, we find it without merit.

Nicole next contends that the BAC failed to perform a full and fair review of her claim.  In particular, she asserts that (1) the BAC did not carry its burden of proving that Exclusion 12 applies, and (2) the BAC's actions show that it was predisposed to deny her appeal from the start.  Nicole argues that the BAC failed to determine whether Shawn was "deemed and presumed" to be intoxicated as a matter of law.  According to Nicole, the BAC improperly relied on Ohio's drunk-driving statute.  Nicole points to StarLine's initial denial letter, in which it explained that "the deceased's blood level content [sic] was in excess of the level at which Ohio presumes intoxication as a matter of law."  Nicole contends that this language must refer to Ohio Revised Code (ORC) § 4511.19, which prohibits operating a motor vehicle while intoxicated.

But even if we assume that StarLine was referring to ORC § 4511.19 in its denial letter, this does not show that the BAC acted arbitrarily or capriciously in denying Nicole's appeal. *See Cook*, 494 F. App'x at 608 (affirming the denial of benefits even though the plan administrator's denial letter was "hardly a model of clarity"). The basic rationale for denying Nicole's claim—namely, Shawn's intoxication and the resulting application of Exclusion 12—stayed the same throughout. *See McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1065 (6th Cir. 2014) (holding that there was "no about face in the reason Defendants denied" a claim where the basic rationale for denying the claim was consistent) (internal quotation marks omitted).

For this reason, the cases relied on by Nicole for the proposition that the BAC employed shifting rationales are distinguishable. *See, e.g.*, *Wenner v. Sun Life Assurance Co. of Can.*, 482 F.3d 878, 880 (6th Cir. 2007) (holding that the denial of benefits was arbitrary and capricious where the claim was initially denied for failure to provide documentation, but later denied because the claimant did not meet the policy's definition of disabled). Nicole's argument that the BAC employed shifting rationales therefore lacks merit.

Nor did the district court err in concluding that another Ohio statute supported the BAC's decision to deny Nicole's appeal. The district court held that Shawn was deemed to be intoxicated under ORC § 313.19, which provides that the "cause of death and the manner and mode in which the death occurred, as . . . incorporated in the coroner's verdict and in the death certificate . . . , shall be the legally accepted manner and mode in which such death occurred." *Cultrona v. Nationwide Life Ins. Co.*, 936 F. Supp. 2d 832, 847–48 (N.D. Ohio 2013); *see also Vargo v. Travelers Ins. Co.*, 516 N.E.2d 226, 229 (Ohio 1987) (explaining that the coroner is "required to engage in quasi-judicial activity when inquiring into the cause of death").

Nicole argues that ORC § 313.19 is inapplicable because Exclusion 12 refers to the "law of the locale," not Ohio state law. And the "law of the locale," Nicole contends, must mean the laws of Twinsburg, Ohio, which has no ordinance equivalent to ORC § 313.19. She notes that the phrases "applicable state law," "laws of the state," and "state law" appear throughout the Plan documents, so Nationwide must have been meant something other than Ohio state law when it used the phrase "law of the locale" in Exclusion 12.

Nicole has pointed out several cases in which federal courts have construed the word "locale" as referring to cities or counties. Nevertheless, the bulk of authority supports the opposite conclusion—that the phrase "law of the locale" means state law. *See Republic Ins. Co. v. Banco de Seguros del Estado*, No. 10 C 5039, 2013 WL 3874027, at *6 (N.D. Ill. July 26, 2013) (discussing the "law of th[e] locale" in reference to state law); *Rotec Indus., Inc. v. Aecon Grp., Inc.*, 436 F. Supp. 2d 931, 936 (N.D. Ill. 2006) (same); *Coto Orbeta v. United States*, 770 F. Supp. 54, 56 (D.P.R. 1991) (same); *Babcock v. Maple Leaf, Inc.*, 424 F. Supp. 428, 433 (E.D. Tenn. 1976) (same).

Although Nicole's proffered interpretation of the phrase "law of the locale" is a rational one, it is equally rational to conclude that "law of the locale" means state law. *See Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004) (holding that "equally rational" interpretations of a disputed term proffered by the plaintiff and the plan administrator were insufficient to show that the plan administrator acted arbitrarily or capriciously). We are required to resolve a tie in favor of the Plan administrator. *See id.* Accordingly, Nicole's argument that the phrase "law of the locale" cannot mean Ohio state law is without merit.

Nicole next asserts that the "coroner's report does not support a legal finding that [Shawn] was deemed and presumed under the law of the locale to be intoxicated." The language in the report, however, belies this assertion, stating that the manner of death was "[a]cute ethanol intoxication . . . ACCIDENT: Prolonged and extreme hypertension of neck and torso while intoxicated." Neither the BAC nor the district court erred in relying on this report, particularly given that Nicole failed to offer any contrary evidence regarding the cause of Shawn's death. *See Vargo*, 516 N.E.2d at 229 (holding that the "coroner's report and death certificate . . . create a non-binding, rebuttable presumption" concerning the facts regarding a death). Nicole's argument regarding the alleged insufficiency of the coroner's report thus has no merit.

Finally, Nicole contends that the BAC acted arbitrarily and capriciously by failing to consult an independent medical professional before denying her appeal. She argues that ERISA's implementing regulations and the BAC's charter require such a consultation. As the district court explained, however, the ERISA regulations relied on by Nicole for this argument are inapposite. *See Cultrona*, 936 F. Supp. 2d at 849 (explaining that

"29 C.F.R. § 2560.503-1(h)(3) pertains only to group health plans," not to accidental-death policies) (internal quotation marks omitted). Moreover, the BAC charter requires a consultation with a medical expert only in cases involving a "medical issue." *Id.* at 850. No disputed medical issue was present in this case because Nicole did not introduce any evidence to rebut the conclusions contained in the coroner's report. The district court's resolution of this issue was sound and Nicole offers no compelling reason for us to reach a contrary conclusion.

**C.    The district court did not abuse its discretion in awarding Nicole a statutory penalty**

Turning now to the BAC's cross-appeal, we examine whether the district court erred in awarding Nicole $55 per day (for a total of $8,910) as a statutory penalty for the BAC's failure to timely provide her with a copy of the accidental-death policy upon written request. Nicole's counsel, in a November 18, 2011 letter, requested "all documents that you contend prove that Nationwide provided notice of Amendment No. 1 . . . and all documents comprising the administrative record and/or supporting Nationwide's decision." The BAC, however, did not provide Nicole's counsel with a copy of the accidental-death policy until June 12, 2012. Pursuant to 29 U.S.C. § 1132(c)(1), the district court imposed an $8,910 penalty against the BAC as a consequence of this delay.

We review the imposition of a penalty under the abuse-of-discretion standard and any accompanying findings of fact under the clear-error standard. *See Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994) ("Because [ERISA] expressly grants a district court discretion in imposing penalties for an employer's failure to disclose, we review only for abuse of discretion."); *Hamilton v. Carell*, 243 F.3d 992, 997 (6th Cir. 2001) (explaining that findings of fact in ERISA cases are "subject to a clearly erroneous standard of review").

The list of documents that a plan administrator must furnish to a participant or beneficiary upon written request is set forth in 29 U.S.C. § 1024(b)(4). These documents include a "copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is . . . operated." *Id.* If a plan administrator fails to respond to a request for one or more of the above documents within 30 days, then the district court may in its discretion impose a penalty against the plan administrator of up to $110 per day.

29 U.S.C. § 1132(c)(1)(B); 29 C.F.R. § 2575.502c-1; *see also Minadeo v. ICI Paints*, 398 F.3d 751, 757 (6th Cir. 2005) ("Congress' purpose in enacting the ERISA disclosure provisions was to ensur[e] that the individual participant knows exactly where he stands with respect to the plan.") (internal quotation marks omitted) (alteration in original).

The BAC argues that the district court erred in construing Nicole's broadly worded document request as including a request for a copy of the accidental-death policy. In making this argument, the BAC urges us to adopt the "clear-notice" standard, a standard that several of our sister circuits have adopted. Under this standard, claimants seeking documents pursuant to § 1024(b)(4) must "provide clear notice to the plan administrator of the information they desire." *See Kollman v. Hewitt Assocs., LLC*, 487 F.3d 139, 145 (3d Cir. 2007) (adopting the standard and collecting similar cases from the Second, Fifth, Seventh, and Tenth Circuits). We see merit in the BAC's argument and thus adopt the standard on a going-forward basis. As summarized in *Kollman*, the key question under the clear-notice standard is whether the plan administrator knew or should have known which documents were being requested. *Id.*

The clear-notice standard strikes a reasonable balance between a claimant's right to timely receive plan-related documents upon request and the civil penalties facing plan administrators under § 1132(c) for excessive delay in providing those documents. *See Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir. 1990) (explaining that § 1132(c) "must be strictly construed" because it is a penalty provision). We further note that a plan administrator is free to place the burden of clarity squarely on the requester simply by replying to an ambiguous demand for § 1024(b)(4) documents with the administrator's own request for greater specificity.

With regard to the present case, we discern no abuse of discretion by the district court in imposing the statutory penalty in question. For one thing, the district court did not err by considering the circumstances surrounding the document request. *See Kollman*, 487 F.3d at 145 ("Each decision depend[s] upon the circumstances of that case and no general rule can be formulated."). Nicole's counsel, true enough, broadly phrased the request as one for "all documents comprising the administrative record and/or supporting Nationwide's decision." Although such language would not pass the clear-notice test for most of the documents identified in 29 U.S.C. § 1024(b)(4), one is hard-pressed to believe that the BAC should not have known

that the accidental-death policy was *the key document* supporting its decision to deny Nicole's claim.  Moreover, the administrative record reflects that the request was sufficiently clear for a StarLine employee to propose sending a "copy of the policy and amendment" to Nicole's counsel.  That employee, however, was instructed by a Nationwide employee to send only a copy of the amendment, not the underlying policy.  *See Cultrona*, 936 F. Supp. 2d at 855 n.15 (citing the evidence of this exchange contained in the administrative record).

Under these circumstances, the district court did not abuse its discretion in concluding that the BAC knew or should have known that the policy was being requested as one of the documents supporting its decision to deny benefits in this case.  *See Anderson v. Flexel, Inc.*, 47 F.3d 243, 248 (7th Cir. 1995) ("Courts have suggested . . . that an administrator's knowledge of surrounding circumstances or the information being requested may require a response to an otherwise general request.").  Accordingly, we reject the BAC's argument that the district court abused its discretion in imposing a statutory penalty under § 1132(c).

**D.      The district court did not abuse its discretion in awarding Nicole less than the maximum penalty**

The final issue on appeal is whether the district court erred in awarding Nicole only $55 per day, rather than the $110 per day she requested as a penalty for the BAC's delay in providing the policy in question.  Section 1132(c) commits the amount of the penalty to the district court's sound discretion.  *See* 29 U.S.C. § 1132(c)(1) (explaining that the court may, in its discretion, impose a penalty "up to" the statutory limit).  Here, the district court considered the lack of prejudice to Nicole in calculating the amount of the penalty.  This consideration was proper.  *See Moothart v. Bell*, 21 F.3d 1499, 1506 (10th Cir. 1994) (noting that the "circuits are in general accord that neither prejudice nor injury are prerequisites to recovery under the penalty provisions of the statute," but that "these are factors the district court may consider in deciding to exercise its discretion to award a penalty").

Although Nicole argues that she did suffer prejudice as a result of the BAC's failure to timely send her a copy of the policy, her arguments on this point are perfunctory and unconvincing.  The district court therefore did not abuse its discretion in awarding Nicole only $55 per day as a statutory penalty for the BAC's delay.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.